# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MINNESOTA

_____

In re:                                                          BKY Case No. 11-47016-DDO

Uptown Drink LLC,                                               Chapter 11

      Debtor.

_____

## UPTOWN DRINK LLC'S DISCLOSURE STATEMENT
## DATED MAY 1, 2012

*Table of Contents*

I.    INTRODUCTION   3
    A.  Purpose of This Document   3
    B.  Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing   3
        1.  *Time and Place of the Hearing to Approve This Disclosure Statement and Confirm the Plan.*   3
        2.  *Deadline For Voting to Accept or Reject the Plan*   3
        3.  *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*   4
        4.  *Identity of Person to Contact for More Information*   4
    C.  Disclaimer   4

II.   BACKGROUND   4
    A.  Description and History of the Debtor's Business   4
    B.  Insiders of the Debtor   4
    C.  Management of the Debtor Before and During the Bankruptcy   5
    D.  Events Leading to Chapter 11 Filing   5
    E.  Significant Events During the Bankruptcy Case   5
    F.  Projected Recovery of Avoidable Transfers   6
    G.  Claims Objections   6
    H.  Current and Historical Financial Conditions   6

III.  SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND PARTNERSHIP INTERESTS   6
    A.  What is the Purpose of the Plan of Reorganization?   6
    B.  Unclassified Claims   6
        *1. Administrative Expenses*   7
        *2. Priority Tax Claims*   8
    C.  Classes of Claims and Partnership Interests   8
        *1. Classes of Secured Claims*   8
        *2. Classes of Priority Unsecured Claims*   9
        *3. Class of General Unsecured Claims*   9
        *4. Class of Administrative Convenience Claims*   10

|  |  |  |  |
|---|---|---|---|
|  |  | *5. Class of Partnership Interest Holders* | 10 |
|  | D. | Means of Implementing the Plan | 10 |
|  |  | *1. Source of Payments* | 10 |
|  |  | *2. Post-confirmation Management* | 11 |
|  | E. | Risk Factors | 11 |
|  | F. | Executory Contracts and Unexpired Leases | 11 |
|  | G. | Tax Consequences of Plan | 11 |
|  | H. | Retention of Jurisdiction | 12 |
| IV. | CONFIRMATION REQUIREMENTS AND PROCEDURES | | 13 |
|  | A. | Who May Vote or Object | 13 |
|  |  | *1. What Is an Allowed Claim or an Allowed Partnership Interest?* | 13 |
|  |  | *2. What Is an Impaired Claim or Impaired Partnership Interest?* | 13 |
|  |  | *3. Who is Not Entitled to Vote* | 13 |
|  |  | *4. Who Can Vote in More Than One Class* | 14 |
|  | B. | Votes Necessary to Confirm the Plan | 14 |
|  |  | *1. Votes Necessary for a Class to Accept the Plan* | 14 |
|  |  | *2. Treatment of Non-Accepting Classes* | 14 |
|  | C. | Liquidation Analysis | 14 |
|  | D. | Feasibility | 15 |
|  |  | 1. *Ability to Initially Fund Plan* | 15 |
|  |  | 2. *Ability to Make Future Plan Payments and Operate Without Further Reorganization* | 15 |
| V. | EFFECT OF CONFIRMATION OF PLAN | | 15 |
|  | A. | Discharge of Debtor | 15 |
|  | B. | Modification of Plan | 16 |
|  | C. | Final Decree | 16 |

# I. INTRODUCTION

On October 27, 2011, Uptown Drink LLC filed a case pursuant to Chapter 11 of the United States Bankruptcy Code. This is the disclosure statement (the "Disclosure Statement") in this chapter 11 case of Uptown Drink LLC (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Plan of Reorganization (the "Plan") filed by the Debtor on May 1, 2012. A full copy of the Plan is attached to this Disclosure Statement. <u>Your rights may be affected</u>. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.

The proposed distributions under the Plan are discussed at pages 8 to 10 of this Disclosure Statement. General unsecured creditors whose allowed claim totals more than $1,000.00 are classified in Class 3, and will receive a pro rata share of regular distributions to be made by the Debtor in amounts and according to the schedule as described the Plan, to commence on the Effective Date or as soon thereafter as is practicable. **The Effective Date of the Plan shall be 15 days after the Plan is confirmed by court order.**

### A.     Purpose of This Document

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or partnership interests of the type you hold (*i.e.*, what you will receive on your claim or partnership interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why Uptown Drink LLC believes the Plan is feasible, and how the treatment of your claim or partnership interest under the Plan compares to what you would receive on your claim or partnership interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B.     Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1. *Time and Place of the Hearing to Approve This Disclosure Statement and Confirm the Plan.*

The hearing at which the Court will determine whether to finally approve this Disclosure Statement and confirm the Plan will take place pursuant to the Order and Notice for Hearing on Confirmation of Plan and Final Approval of Disclosure Statement.

2. *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Clerk of Bankruptcy Court, 200 Warren E. Burger Federal Building and U.S. Courthouse, 316 North Robert Street, St. Paul, MN 55101. See section IV(A) below for a discussion of

voting eligibility requirements. Your ballot must be received by the date indicated on the Order and Notice for Hearing on Confirmation of Plan and Final Approval of Disclosure or it will not be counted.

   3. *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon the attorney for the proponent, the attorneys for all committees, and the United States Trustee by the date indicated on the Order and Notice for Hearing on Confirmation of Plan and Final Approval of Disclosure Statement.

   4. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Lynn Wartchow of Wartchow Law Office, 5200 Willson Road, Suite 150, Edina, MN 55424, telephone 952-836-2717, facsimile 952-674-4339, or email lynn@wartchowlaw.com. For questions after the Effective Date, or to change a creditor address, you should contact the Debtor directly through Uptown Drink LLC, 1400 Lagoon Avenue, Minneapolis, MN 55408, telephone (651) 552-1002.

**C.    Disclaimer**

The Court has conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan. Objections to the adequacy of this Disclosure Statement may be filed until the date indicated pursuant to the Order and Notice for Hearing on Confirmation of Plan and Final Approval of Disclosure Statement.

## II.    BACKGROUND

**A.    Description and History of the Debtor's Business**

The Debtor is a Minnesota limited liability company that operates a bar and restaurant in the Uptown area of Minneapolis called Uptown Drink, a.k.a. Uptown Tavern and Rooftop. Uptown Tavern and Rooftop features a full restaurant menu, a seasonal rooftop terrace and seating area, and a full interior bar and restaurant space including a game room. Since it first opened in 2005, Uptown Drink has been a popular mainstay in the Uptown entertainment scene, drawing crowds of customers throughout the week and on weekends. The expansive rooftop terrace is key feature of the Debtor's business, drawing significantly increased operational revenue during the more temperate months from late spring to early fall.

**B.    Insiders of the Debtor**

Insiders of the Debtor are defined by §101(31) of the United States Bankruptcy Code. The names of the insiders of the Debtor, their relationship to the Debtor and the compensation paid by the Debtor, if any, during the two years prior to the commencement of the Debtor's bankruptcy case, as well as compensation paid during the pendency of this chapter 11 case, are as follows:

| Name of Insider | Relationship to Debtor | Compensation received during two years prior | Compensation paid during the pendency |
|---|---|---|---|

|  |  | to commencement of the bankruptcy case | the bankruptcy case |
|---|---|---|---|
| Nedal Abul-Hajj | Partner | $0 | $0 |
| James Rowland | Partner | $0 | $0 |
| Fun Group, Inc. | Partner | $15,750 | $835 |
| Michael Whitelaw | Managing agent of debtor / Affiliate | $9,600 | $0 |
| TBJ, LLC | Affiliate | $0 | $0 |
| Charter Enterprises, LLC | Affiliate | $0 | $0 |

C.   **Management of the Debtor Before and During the Bankruptcy**

Since the commencement of its operations in 2005, the Debtor was primarily managed by Michael Whitelaw. The Manager of the Debtor during the chapter 11 case has remained Michael Whitelaw. After the Effective Date of the order confirming the Plan, the Post Confirmation Manager will continue to be Michael Whitelaw. The responsibilities and compensation of this Post Confirmation Manager are described in section III(D)(2) of this Disclosure Statement.

D.   **Events Leading to Chapter 11 Filing**

Since 2005, the Debtor has operated a restaurant and bar located in the Uptown area of Minneapolis called Uptown Drink, a.k.a. Uptown Tavern and Rooftop. The Debtor's revenue is primarily from sales of food and drinks. While the Debtor has experienced modest profits from operations since it began, its net ordinary income has decreased significantly over the past several years due to the general decline in the economy and increased cost of goods. As such, the Debtor was previously unable to accrue the reserved funds necessary for unanticipated and unordinary expenses during the past two years, including for the costs of defending the lawsuits that plagued the business in 2010 and 2011. In particular, an employee wage claim was brought under the Minnesota Fair Labor Standards Act against the Debtor in early 2010. Despite the eventual jury award to plaintiffs of $15,666, the Debtor incurred over $167,000 in attorney fees defending the case in addition to the statutory award of attorney fees and costs of $684,697 entered against the co-defendants. Ultimately, the Debtor's initial defense attorneys obtained a default judgment against the Debtor in July 2011 for the unpaid balance of $76,408 plus interest. Since the entry of that judgment, the judgment-creditor commenced levying upon the Debtor's operating bank account which effectively depleted the Debtor's operating funds on each such occasion. The repeated levies during the three-month period preceding the commencement of this Chapter 11 proceeding seriously jeopardized the Debtor's ability to fund its operating expenses including its employee payroll. To avoid further harm and imminent devastation to its operations, the Debtor filed for immediate Chapter 11 relief on October 27, 2011.

E.   **Significant Events During the Bankruptcy Case**

Since the filing of this bankruptcy case, the Debtor has made no asset sales outside the ordinary course of its business and has not obtained post-petition debtor in possession financing. The Debtor obtained the following orders from the Bankruptcy Court: dated November 3, 2011 authorizing the payment of pre-petition wage and employee compensation claims (Docket No.10); and dated November 30, 2011 finally approving the Stipulation for Use of Cash Collateral and for Adequate Protection (Docket No.25). The

Court has approved the employment of Lynn Wartchow of Wartchow Law Office as bankruptcy attorney in this proceeding and for Kenneth-Corey Edstrum as attorney for the unsecured creditors' committee.

No adversary proceedings have been filed in this case and there has been no significant legal or administrative proceedings commenced during this case in a forum other than the Bankruptcy Court.

**F.    Projected Recovery of Avoidable Transfers**

The Debtor has evaluated any potential pre-petition actions upon which to pursue recovery and has determined that it may pursue an avoidance action necessary to recover funds garnished pre-petition pursuant to the Hennepin County Case No. 27-CV-11-1363 captioned as "Bernick, Lifson, Greenstein, Greene & Liszt PA vs Drink Inc, Uptown Drink LLC, Downtown Entertainment Ventures LLC, Fun Group Inc, and Michael Whitelaw". The Debtor does not anticipate that it has any other preference, fraudulent conveyance, or other avoidance actions. The Debtor reserves it right to bring any and all preference, fraudulent conveyance, or other avoidance actions and to preserve such action for the benefit of the Debtor and its estate.

**G.    Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims including any and all objections to any and all claims and motions or requests for the payment of claims, whether administrative expense, priority, secured or unsecured, including, without limitation, whether under the Bankruptcy Code, other applicable law or contract. The Debtor's failure to object to any claim or interest in the Chapter 11 proceeding shall be without prejudice to the Debtor and the Debtor's rights to contest or otherwise defend against such claim or interest in the Bankruptcy Court when and if such claim or interest is sought to be enforced by the holder of such claim or interest. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

**H.    Current and Historical Financial Conditions**

The identity and value of the estate's assets are listed in Exhibit A, and valuation is provided both for the file date of 10/27/11 and for the date 4/01/12. The Debtor's most recent financial statements issued before bankruptcy, each of which was filed with the Court, are set forth in Exhibit B. Additionally a liquidation analysis is provided as Exhibit C.

**III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND PARTNERSHIP INTERESTS**

**A.    What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and partnership interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or partnership interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**B.    Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in

their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

    1. *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $0. | This amount represents regular expenses that have arisen in the ordinary course of the Debtor's business since the file date of 10/27/11 that remain unpaid as of the date of this plan. These expenses are represented on Exhibit D within various categories as operating expenses. including for such items as inventory purchases, utilities, advertising, etc. These expenses will be paid in full in the ordinary course of business as they become due prior to the Effective Date, on the Effective Date of the Plan, or according to terms of obligation if later. |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $0. | Paid in full on the Effective Date of the Plan, or according to terms of obligation if later |
| Professional Fees, as approved by the Court. | $13,500. (est.) | This amount represents an estimate of the fees incurred by the Debtor for services of professionals previously approved by the court, including attorney fees. These fees will be paid in full on the Effective Date of the Plan, or as extended over time according to separate written agreement, or according to court order if such fees have not been approved by the Court on the Effective Date of the Plan. |
| Clerk's Office Fees | $0. | Paid in full on the Effective Date of the Plan |
| Other administrative expenses | $0. | Paid in full on the Effective Date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | $4,875. | Fees payable to the US Trustee as required under 11 U.S.C. § 1930(a)(6) will be paid in a timely fashion until the case is closed, dismissed or converted to another chapter of the Bankruptcy Code. Additionally, the Debtor is obligated to file Post-Confirmation Quarterly |

|  |  | Reports to the US Trustee as well as continue to pay quarterly fees to the US Trustee until the case is closed, dismissed or converted. |
|---|---|---|
| **TOTAL** | **$18,375.** |  |

2. *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Pursuant to § 1129(a)(9)(C) of the Code and unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief. The holders of priority tax claims include the Minnesota Department of Revenue for accrued pre-petition sales tax totaling approximately $500,000.00, inclusive of related interest and penalties. In satisfaction of its Allowed Priority Tax Claims, the Debtor estimates that the Minnesota Department of Revenue shall receive fifty-one (51) monthly payments of $10,455, including 3.0% accruing interest, beginning on the Effective Date, and that - the Internal Revenue Service shall receive fifty-one (51) monthly payments of $423 including 3.0% accruing interest, beginning on the Effective Date.

The Debtor does not have any other holders of priority tax claims.

**C.      Classes of Claims and Partnership Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1. *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class and Description | Impairment | Insider? | Treatment |
|---|---|---|---|
| Class 1 - Secured Claim of Plaza I, Inc. | Impaired | No | The claim of Plaza I, Inc. arises from a promissory note and commercial security agreement originally between the Debtor and Americana Community Bank, and subsequently assigned to Plaza I, Inc., and having an amount due as of the date of filing of $339,051.86. This claim is secured by a first priority lien on certain collateral of the Debtor including inventory, deposit accounts, chattel paper, instruments, letter-of-credit rights, letters of credit, documents, investment property, money, other rights to payment and performance, and general intangibles. The security interest of Plaza I, Inc. has been properly perfected by |

|  |  |  |
|---|---|---|
|  |  | valid UCC financing statements filed with the Minnesota Secretary of State filed as Document Nos. 201020308107 (05/20/10) and 20102176097 (10/11/10). There is no pre-petition arrearage.

The legal, equitable and contractual rights of Plaza I, Inc. are altered by this Plan. The obligation of the Debtor shall be reduced to the current collateral value and amount of the allowed Plaza I, Inc. secured claim of $320,358.14, to be paid in payments due of $6,500.00 per month for 53 months, commencing in the first full calendar month following the Effective Date of this Plan and continuing through the final payment due in December of 2016. Plaza I, Inc. will retain its secured position in Debtor's company assets exclusive of Article V actions, if any.

Plaza I, Inc. shall also have an unsecured deficiency claim in an allowed amount of $18,693.71 to be included in Class 2. |

  2. *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the Effective Date of the Plan equal to the allowed amount of such claim unless the holders of such claims may vote to accept different treatment. The Debtor has no class of priority unsecured claims.

  3. *Class of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code or otherwise are not treated in any other class under the Plan. The following chart identifies the Plan's proposed treatment of Class 2, which contains general unsecured claims against the Debtor:

| **Class and Description** | **Impairment** | **Treatment** |
|---|---|---|
| Class 2 - General Unsecured Creditors | Impaired | Class 2 includes all the general unsecured claims against the Debtor that are not entitled to priority and not treated in any other class in the Plan. The Debtor estimates these claims to total $1,044,489.87. In full satisfaction of each Class 2 claim, the holder shall receive pro rata share of regular distributions totaling $122,850 to be made by the Debtor in amounts and according to the schedule as follows: The payment of such sum will be made in five (5) payments occurring in the first full calendar month following the Effective Date of this Plan and on the first, second, third and fourth anniversary of the Effective Date of this Plan. The distributions shall be made in the order and amounts as follows:<br><br> 1. $5,600 in the first full calendar month following the Effective |

| | | Date and estimated on or before September 1, 2012.<br>2. $30,500 estimated on or before September 1, 2013.<br>3. $17,000 estimated on or before September 1, 2014.<br>4. $27,000 estimated on or before September 1, 2015.<br>5. $42,750 estimated on or before September 1, 2016.<br><br>The Debtor estimates that unsecured creditors in Class 2 shall receive a minimum of 11.76% of their allowed claims, without interest. |
|---|---|---|

*4. Class of Administrative Convenience Claims*

Class 3 includes all allowed general unsecured claims not entitled to priority where the total of the allowed claim does not exceed $1,000.00. The following chart sets f identifies the Plan's proposed treatment of Class 3:

| Class and Description | Impairment | Treatment |
|---|---|---|
| Class 3 - Administrative Convenience Claims of General Unsecured Creditors | Impaired | In full satisfaction of each Class 3 claim, the holder shall receive 100% of their claims within ninety days after the Effective Date. |

*5. Class of Partnership Interest Holders*

Partnership interest holders are parties who hold an ownership interest (*i.e.*, partnership interest) in the Debtor. In a partnership, entities that are limited or general partners are partnership interest holders. The following chart sets forth the Plan's proposed treatment of the single class of partnership interest holders:

| Class and Description | Impairment | Treatment |
|---|---|---|
| Class 4 - Partnership Interest Holders of the Debtor | Unimpaired | All Class 4 partnership interests in Debtor shall remain in place and continue to be held by the holders thereof. |

**D**. **Means of Implementing the Plan**

1. *Source of Payments*

Payments and distributions under the Plan will be funded by the Debtor's income from its continued operations. Attached to the Disclosure Statement and marked as Exhibit D are projections prepared by the Debtor's management. If the Debtor's Plan is confirmed, the Debtor is confident of its ability to meet or

exceed these projections and perform as set forth under the Plan. Additionally and due to the highly seasonal nature of the Debtor's business and its ability to maintain an open rooftop area for customers during the more temperate months, the Debtor will reserve the necessary funds during the late spring to early fall months when the Debtor experiences heightened revenue in order to fund the payments and distributions contemplated under the Plan during the lower-revenue winter months.

### 2. *Post-confirmation Management and Compensation*

The post-confirmation management of the Debtor shall be conducted by Michael Whitelaw. Mr. Whitelaw is the general manager of the Debtor and receives no compensation from the Debtor. The Debtor anticipates that the only potential future compensation be paid to Michael Whitelaw will be for the fair value of his management services.

### E.    Risk Factors

The risk factor that might affect the Debtor's ability to make payments and other distributions required under the Plan is if the Debtor's operations fail to realize income as of the Effective Date of the Plan. Since the Debtor anticipates that it will operate in a positive cash flow through the Effective Date and for the duration of the periods implicated in this Plan, this is not considered to be a probable risk.

### F.    Executory Contracts and Unexpired Leases

The Plan, in Article VI, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Article VI also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

The Debtor has one nonresidential real property lease with Lagoon Partners, LLC for the business premises. As to this real property lease, the Debtor intends to assume the lease pursuant to the pending motion to assume real property lease and continued rent payment due under the terms of the lease through at least August 2013, or otherwise by operation of this Plan.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Article VI will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases. If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

### G.    Tax Consequences of Plan

**Creditors and Partnership Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.**

The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers of this Disclosure Statement about the possible tax issues this Plan may present to the Debtor. The plan proponent cannot and does not represent that the tax consequences contained below are the only tax consequences of the Plan because the U.S. Tax Code embodies many complicated rules which make it

difficult to state completely and accurately all the tax implications of any action. The following discussion summarizes certain federal income tax consequences of the Plan to the Debtors and to holders of general unsecured claims and interests. This summary does not address the federal income tax consequences to holders whose claims are paid in full, in cash, or which are otherwise not impaired under the Plan. This summary does not address state or local income tax consequences, or any estate or gift tax consequences of the Plan.

The most significant potential and material federal tax consequence of the Plan on the Debtor would be that certain tax attributes, including, but not limited to, net operating losses, certain tax credits, and the Debtor's basis in property, could be reduced to the extent that debt is discharged. The Debtor has not determined what, if any, tax consequences it will experience by reason of the Plan. The Debtor will continue to make pay all taxes timely and as they become due and does not anticipate significant tax consequences resulting from a discharge.

The following are the anticipated tax consequences of the Plan on holders of claims: In accordance with the Plan, each holder of an allowed general unsecured claim shall be entitled to receive a distribution, and will recognize gain or loss upon receipt of such distribution equal to the difference between the "amount realized" by such creditor and such creditor's adjusted tax basis in its claim. The amount realized is equal to the value of such creditor's distribution. Any gain or loss realized by an unsecured creditor should constitute ordinary income or loss to such creditor unless such claim is a capital asset in the hands of such unsecured creditor. If a claim is a capital asset and it has been held for more than one year, such creditor will realize long-term capital gain or loss. The federal income tax consequences to unsecured creditors will differ and will depend on factors specific to each such creditor, including, but not limited to: (i) whether the unsecured creditor's claim (or a portion thereof) constitutes a claim for principal or interest, (ii) the origin of the unsecured creditor's claim, (iii) the type of consideration received by the unsecured creditor in exchange for the claim, (iv) whether the unsecured creditor is a United States person or a foreign person for United States federal income tax purposes, (v) whether the unsecured creditor reports income on the accrual or cash basis method, and (vi) whether the unsecured creditor has taken a bad debt deduction or otherwise recognized a loss with respect to the claim.

**H.     Retention of Jurisdiction**

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction, pursuant to 28 U.S.C. §§ 1334 and 157, over all matters arising in, arising under, or related to the Reorganization for, among other things, the following purposes: 1. to resolve all matters relating to the ownership of a claim or interest; 2. to resolve all matters relating to the distribution to holders of allowed claims and to the determination of claims; 3. to resolve all matters relating to the allowance, classification, priority, compromise, estimation, or payment of any claim, administrative claim, or interest; 4. to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated; 5. to resolve all matters relating to the construction and implementation of this Plan or the Confirmation Order, and to hear and determine all requests for orders in aid of execution, implementation or consummation of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan; 6. to consider any modifications to this Plan in accordance with section 1127 of the Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof; 7. to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Effective Date; 8. to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court; 9. to hear and determine all applications for allowance of

compensation and reimbursement of professional fee claims under this Plan or under sections Code §§ 328, 330, 331, 503(b), 1103 and 1129(a)(4) of the Code; 10. to hear and determine all motions requesting allowance of an administrative claim or fee claim; 11. to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Code; 13. to resolve disputes concerning disputed claims; 12. to resolve all disputes involving the existence, nature or scope of the Debtor's discharge; 13. to hear and determine any other matters related hereto and not inconsistent with the Code and title 28 of the United States Code; and 14. to enter a final decree closing the Reorganization.

### IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and partnership interest holder at least as much as the creditor or partnership interest holder would receive in a Chapter 7 liquidation case, unless the creditor or partnership interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

**A.    Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met. A class that is not impaired under a plan is conclusively presumed to have accepted the plan and, as such, votes will not be solicited as to holders of unimpaired claims. Since Classes 1, 2 and 3 are impaired by the Plan, the holders of claims in all Classes are entitled to vote to accept or reject the Plan.

　　　　1. *What Is an Allowed Claim or an Allowed Partnership Interest?*

Only a creditor or partnership interest holder with an allowed claim or an allowed partnership interest has the right to vote on the Plan. Generally, a claim or partnership interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or partnership interest, unless an objection has been filed to such proof of claim or partnership interest. When a claim or partnership interest is not allowed, the creditor or partnership interest holder holding the claim or partnership interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or partnership interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

　　　　2. *What Is an Impaired Claim or Impaired Partnership Interest?*

As noted above, the holder of an allowed claim or partnership interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

　　　　3. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and partnership interests are *not* entitled to vote:

- ▪ Holders of claims and partnership interests that have been disallowed by an order of the Court;

- Holders of other claims or partnership interests that are not "allowed claims" or "allowed partnership interests" (as discussed above), unless they have been "allowed" for voting purposes.
- Holders of claims or partnership interests in unimpaired classes;
- Holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and
- Holders of claims or partnership interests in classes that do not receive or retain any value under the Plan;
- Administrative expenses.

Even if you are not entitled to vote on the Plan, you may have a right to object to the confirmation of the Plan and to the adequacy of the disclosure statement.

### 4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B.  Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later.

### 1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.  A class of partnership interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed partnership interests in the class, who vote, cast their votes to accept the Plan.

### 2. *Treatment of Non-Accepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind non-accepting classes of claims or partnership interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan. You should consult your own attorney if a "cramdown" confirmation will affect your claim or partnership interest, as the variations on this general rule are numerous and complex.

### C.  Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and partnership interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and partnership interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as Exhibit C.

### D.  Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. The Effective Date of the Plan shall be 15 days after the Plan is confirmed by court order.

2. *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments. The Plan Proponent has provided projected financial information including payments due under this Plan. Those projections are listed in Exhibit D. You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.

## V.    EFFECT OF CONFIRMATION OF PLAN

### A.    Discharge of Debtor and Re-Vesting of Property in Debtor

To the full extent provided for in Section 1141 of the Bankruptcy Code, confirmation of this Plan has a binding effect on the Debtor as well as any creditor or partnership security holder in the Debtor, whether or not such person's claim or interest is impaired under the plan and whether or not such creditor or partnership security holder has accepted the plan. Confirmation of this Plan constitutes a complete discharge, waiver, release and satisfaction of all claims against and interests in the Debtor except as provided in this Plan and whether or not a proof of claim has been filed, such claim is an allowed claim, or the holder of a claim has accepted the Plan. The discharge will operate to release and extinguish any purported liens, encumbrances, or security interests claimed by a claimant or any other entity against the property of the Debtor, property dealt with by the Plan, and property of the Debtor's bankruptcy estate, except as otherwise specifically provided in the Plan. The order confirming the Plan is a general adjudication and resolution with prejudice of all pending legal proceedings against the Debtor, the property of the Debtor, or property of the Debtor's bankruptcy estate except as otherwise provided for in the Plan.

The discharge and order confirming the Plan operate as an injunction to the extent provided in Section 524 of the Bankruptcy Code. Any creditor or partnership holder entitled to receive any distribution pursuant to this Plan will be presumed conclusively to have release the Debtor from any claim related to that with respect to which the distribution is made. This release will be enforceable as a matter of contract law against any creditor or partnership holder that acquires any right to distribution pursuant to this Plan.

Subject to the terms of the Plan, on the date that the order confirming the Plan is entered, the Debtor will be restored to full ownership of all property owned by the Debtor, all property of the estate, and all property dealt with by the Plan. The property so vested in the Debtor will be free and clear of all claims, liens, encumbrances, charges, and other interests of holders of claims or interests, except as otherwise provided in the Plan. On and after the date on which the order confirming the Plan is entered, the Debtor

may freely operate its business and may freely use, acquire, and dispose of property of the estate and property of the Debtor, except as otherwise provided in the Plan. Except as may otherwise be expressly provided for in the Plan or by order of the Court, the Debtor's operation of its business and use of property will not be subject to any restrictions imposed by operation of the Bankruptcy Code, the Bankruptcy Rules, or any prior Bankruptcy Court order entered during the bankruptcy case.

B.     **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan. The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

C.     **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

Dated: May 1, 2012

_____
Michael Whitelaw, Managing Agent of the Plan Proponent

Dated: May 1, 2012

_____
Lynn J.D. Wartchow, Attorney for the Plan Proponent